IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| vs. | ) | 21-00101-CR-W-SRB |
| | ) | |
| KENDRA KINGSBURY, | ) | Kansas City, Missouri |
| | ) | October 13, 2022 |
| Defendant. | ) | |

..............................

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE STEPHEN R. BOUGH
UNITED STATES DISTRICT COURT JUDGE

Proceedings recorded by electronic stenography
Transcript produced by computer

APPEARANCES

For the Plaintiff: MR. PATRICK C. EDWARDS
MR. DAVID RASKIN
United States Attorney's Office
400 East 9th Street
Kansas City, Missouri 64106

For the Defendant: MR. WILLIAM ERMINE
Federal Public Defender's Office
1000 Walnut, Suite 600
Kansas City, Missouri 64106

Also Appearing: Mr. Scott Claffee

Gayle M. Wambolt, RMR, CRR
U.S. Court Reporter, Room 7552
Charles Evans Whittaker Courthouse
400 East Ninth Street
Kansas City, MO 64106 (816) 512-5641

THURSDAY, OCTOBER 13, 2022

THE COURT: We are here on the case of United States of America v. Ms. Kendra Kingsbury, Case No. 21-101.

May I have appearances by the parties, please?

MR. EDWARDS: Morning, Your Honor. Patrick Edwards, David Raskin, and Scott Claffee on behalf of the United States.

THE COURT: Good morning.

MR. ERMINE: Marc Ermine on behalf of Ms. Kingsbury, who appears in person. With me at counsel table is the defense investigator Gina Slack.

THE COURT: Ms. Kingsbury, ma'am, would you please rise and we're going to swear you in.

KENDRA KINGSBURY, being duly sworn by the courtroom deputy, testified:

EXAMINATION BY THE COURT:

Q Ma'am, you might just pull that microphone over a little bit.

Ma'am, do you understand that you are now under oath and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or making a false statement?

A Yes.

Q Ma'am, what's your full name?

A Kendra D. Kingsbury.

Q How old are you, ma'am?
A 50.
Q And how far did you go in school?
A Master's.
Q Have you been treated recently for any mental illness or addiction to narcotic drugs?
A No.
Q Are you currently under the influence of any drug or medication or alcoholic beverage?
A No. Prescription for type 2 diabetes.
Q Okay. Have you received a copy of the indictment pending against you?
A Yes.
Q Have you fully discussed those charges and the case in general with Mr. Ermine?
A Yes.
Q Has he done everything you've asked him to do?
A Yes.
Q Do you have any question, concern, or complaint about his advice?
A No. I've already shared those with my counsel.
Q Do you have -- are you fully satisfied with counsel, representation, and advice given to you?
A Yes.
Q Has anyone attempted in any way to force you to plead

guilty?

A No.

Q Are you pleading guilty of your own free will because you are in fact guilty?

A Yes.

Q Do you understand the offense to which you're pleading guilty is a felony?

A Yes.

Q You understand if your plea is accepted, you'll be adjudged guilty of those offenses and that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

A Yes.

Q Do you understand you're agreeing to plead guilty to Counts 1 and 2 of the indictment charging you with a violation of 18 U.S.C. 793(e), that is, willful retention of national defense information?

A Yes.

Q You understand by entering a plea of guilty, you admit you knowingly committed these offenses and are in fact guilty of these offenses?

A Yes.

Q Do you understand that on each of Counts 1 and 2 of the indictment, that the maximum penalty the court may impose is

not more than ten years of imprisonment, a $250,000 fine, three years of supervised release, and these are class C felonies that include a $100 mandatory special assessment?

A Yes.

Q Do you understand all the possible consequences of your plea?

A Yes.

Q Do you understand that if you enter a plea of guilty, the court will determine a reasonable and appropriate sentence in your case at the time of your sentencing hearing?

A Yes.

Q Do you understand that in determining an appropriate sentence, the court will take into consideration all statutory factors required which include but are not limited to the recommendation of the United States Sentencing Guidelines?

A Yes.

Q Do you understand that the guidelines are discretionary and not mandatory?

A Yes.

Q Do you understand you could be sentenced to a term as recommended by the guidelines, less than the guidelines, or even greater than the guidelines?

A Yes.

Q Have you and your attorney talked about how the guidelines might apply?

A Yes.

Q You understand that it's my responsibility to determine how the guidelines apply?

A Yes.

Q You understand I'll not be able to determine the guidelines until after the presentence report has been completed and both you and the government have had an opportunity to challenge the reported facts and the conclusions on the guidelines?

A Yes.

Q Do you understand that if it's necessary for the court to determine issues of fact in deciding how the guidelines apply, those factual issues will be decided by the court on the basis of the greater weight of the evidence presented?

A Yes.

Q Do you understand that in deciding any factual issues, the court will consider all information deemed by the court to be reliable which could include hearsay?

A Yes.

Q And do you understand if the court determines that the application of the guidelines is different than what you or your attorney thought they would be, that will not provide you with grounds to withdraw a plea of guilty?

A Yes.

Q You understand that parole has been abolished in the

federal system and if you are sentenced to prison, you will not be released on parole?

A Yes.

Q Do you understand that if you enter a plea of guilty, you will not later be allowed to withdraw your plea based upon the nature or the length of the sentence you receive?

A Yes.

Q Do you understand that you have the right to plead not guilty to any offense charged against you, to persist in that plea, and that you would then have the right to trial by jury?

A I do.

Q You understand at trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt?

A Yes.

Q You understand you would have the right to assistance of counsel in your defense, the right to see and hear all witnesses, have them cross-examined in your defense and the right on your own part to decline to testify unless you voluntarily elected to do so?

A Yes.

Q You understand you would have the right to issue subpoenas to compel the attendance of witnesses and you understand should you decide not to testify or put on any evidence, these facts cannot be used against you?

A Yes.

Q Do you understand that by entering a plea of guilty, if that plea is accepted, there will be no trial and you will have waived or given up your right to trial as well as all those other rights associated with trial as I've just described them to you?

A I do.

Q You understand you're about to enter a plea of guilty to Counts 1 and 2 of the indictment charging you with willful retention of national defense information?

A I do.

Q You understand by entering a plea of guilty, you admit that you knowingly committed this offense and are in fact guilty of these offenses?

A I am.

THE COURT: Mr. Edwards or Mr. Raskin, would one of you please summarize the evidence that you believe the government could produce at trial.

MR. EDWARDS: Yes, Your Honor.

I'm going to move to the podium if that's okay.

THE COURT: Please.

MR. EDWARDS: Your Honor, if this case were to go to trial, the United States would present evidence at that trial such that would prove the defendant guilty beyond a reasonable doubt including that Ms. Kingsbury was employed by the Federal

Bureau of Investigation from 2004 to on or about December 15th of 2017, in the position of intelligence analyst. In her position as intelligence analyst, Kingsbury was assigned to a sequence of different FBI squads, each of which had a particular focus such as illegal drug trafficking, violent crime, violent gangs, and counterintelligence.

In connection with her FBI employment and in furtherance of her duties as an intelligence analyst, Kingsbury held a top secret SCI security clearance and had access to national defense and classified information. The national defense and classified information to which Kingsbury had access was owned by, produced by, produced for, and under the control of the United States government.

Kingsbury's access to such information was restricted by classification of the information. Some information was further restricted through compartmentation and sensitive compartmented information categories or SCI.

The classified information to which Kingsbury had access, including SCI, was marked according to its classification and applicable SCI compartments following standard formats for different types of media, including but not limited to headers and footers stating the highest classification level and SCI compartments of information a document contained and individual classification markings for each paragraph.

The classified information to which Kingsbury had access, including SCI, could only be lawfully accessed by persons determined by an appropriate United States government official to be eligible for access to classified information who had signed and approved nondisclosure agreement who received a security clearance and who had a need to know the classified information.

Such information could only be stored in an approved facility and container. Kingsbury's access to national defense and classified information was based in part upon her agreement to follow the laws, regulations, and government policies regarding the handling, marking, transportation, and storage of classified materials.

Over her 12 and a half years, holding a security clearance, Kingsbury signed numerous agreements with the United States government agreeing to abide by these conditions. Kingsbury regularly received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI as well as the proper handling, marking, transportation, and storage of classified materials.

Kingsbury received training on her duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. Kingsbury knew that unauthorized removal of

classified materials and transportation and storage of those materials in unauthorized locations risked disclosure of those materials and, therefore, could endanger the national security of the United States and the safety of its citizens.

In particular, Kingsbury was advised repeatedly prior to December 11th, 2017, that unauthorized disclosure of secret information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe.

In executing a nondisclosure agreement in 2004, when she started working at the FBI, Kingsbury acknowledged, quote, I have been advised that the unauthorized retention of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation, end quote.

Training presentations and materials specifically warned Kingsbury that she was prohibited from retaining classified information at her personal residence. Classified information relating to the national defense is closely held and maintained under specific security conditions. Because Kingsbury held a security clearance, had received training regarding the protection of classified information, and was employed by the FBI as an intelligence analyst, the United States government entrusted her with access to sensitive government materials, including information relating to the national defense that was closely held by the United States

government and other classified documents and materials.

Kingsbury had access to these sensitive government materials at a secure area of the FBI's Kansas City division and, otherwise, through secure government computer systems and programs.

Repeatedly over the course of her FBI employment, Kingsbury removed from the FBI and retained in her personal residence an abundance of sensitive government materials, including national defense information and classified documents. In total, Kingsbury improperly removed and unlawfully and willfully retained approximately 386 classified documents in her personal residence.

The documents retained by Kingsbury in her personal residence included documents in electronic format on hard drives, compact disks, and other storage media. Through the course of the investigation, it was discovered that Kingsbury had initiated searches in classified FBI databases utilizing information obtained from the sensitive government materials discovered in her home that were improperly removed and unlawfully and willfully retained by Kingsbury.

The national defense information that Kingsbury unlawfully retained and included -- unlawfully retained included numerous documents classified at the secret level from the FBI that described intelligence sources and methods related to United States government efforts to defend against

counterterrorism, counterintelligence, and cyber threats.

These documents included details on the FBI's nationwide objectives and priorities, including specific investigations across multiple field offices that were open at the time Kingsbury unlawfully retained the documents.

In addition, there were documents relating to sensitive human source operations and national security investigations, intelligence gaps regarding hostile foreign intelligence services and terrorist organizations, and the technical capabilities of the FBI against counterintelligence and counterterrorism targets.

These documents included the following classified documents referred to in Count 1 of the indictment in this case, and I would refer the court to the list of ten documents included in Count 1.

The national defense information that Kingsbury unlawfully retained included numerous documents classified at the secret level from another government agency that described intelligence sources and methods related to U.S. government efforts to collect intelligence on terrorist groups. The documents included information about Al-Qaeda members on the African continent including a suspected associate of Osama bin Laden.

In addition, there were documents regarding the activities of emerging terrorists and their efforts to

establish themselves in support of Al-Qaeda in Africa. These documents included the following classified documents and are referred to in Count 2 of the indictment in this case, and I would again refer the court to the indictment; specifically, the ten documents listed in Count 2.

Kingsbury knew that these 20 documents were classified, contained national defense information, and that she did not have a need to know the information contained in the documents. Kingsbury knew that the information in these documents could be used to the injury of the United States or to the advantage of any foreign nation. Kingsbury was not authorized to possess these documents in her personal residence, and her personal residence was not a location authorized to store classified information.

Kingsbury knew that her personal residence was not an authorized location for such storage and having unauthorized possession of these 20 documents relating to the national defense. She willfully retained the documents and failed to deliver them to an officer or employee of the United States entitled to receive them.

That, Your Honor, is a summary of the evidence that the government would present at trial to prove the defendant guilty beyond a reasonable doubt of both Counts 1 and 2.

THE COURT: Ms. Kingsbury, do you understand the government would be required to prove all that at trial?

THE DEFENDANT: Yes.

THE COURT: Did you do the things the government said you did?

THE DEFENDANT: Yes.

THE COURT: How do you now plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It's the finding of the court in the case of the United States v. Ms. Kendra Kingsbury that the defendant is fully competent and capable of entering an informed plea; that the defendant is aware of the nature of the charges and the consequences of the plea; and the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is accepted, and the defendant is now adjudged guilty of those offenses.

Ma'am, a written presentence report will be prepared by the probation office to assist in sentencing. You will be asked to give information for that report, and your attorney may be present if you wish.

The court will permit you and your counsel to read the presentence report and file any objections to the report before the sentencing hearing. Both you and your counsel will be given an opportunity to speak at the sentencing hearing, which we're going to set for March 16, 2023, at 1:30 p.m.

Would the government like to be heard on the issue of bond?

MR. EDWARDS: Not at this time, Your Honor.

THE COURT: Ma'am, you'll remain on the same conditions of bond that have previously been set forth. Have you already surrendered your passport?

THE DEFENDANT: Yes. The court should have it.

THE COURT: Very good.

Anything else?

MR. EDWARDS: Judge, I have two additional topics I'd like to cover for the record at this time. The first is the discovery obligations that the government had in this case and has fulfilled in this case. For the record, this is a case that involved both classified and unclassified discovery. The unclassified discovery included close to or approximately 8,650 pages of unclassified material. That also included photos and videos.

That unclassified discovery was provided to defense shortly after the indictment. There was also classified discovery in this case. That classified discovery, once Mr. Ermine and the rest of the defense team had received proper clearance from the United States government, Mr. Ermine was able to review the 20 indictment documents that are named in the indictment at the FBI in a secured facility where they can be properly viewed by an individual.

The defendant was also afforded the opportunity to review the 20 classified indictment documents also at an FBI facility. The remainder of the classified discovery was made available to the defense team for review if they so wished.

The other thing that I'd like to note for the record, Judge, are the plea negotiations that led us here today. Mr. Ermine contacted myself and Mr. Raskin back on July 26th -- or, excuse me, back on May 16th of 2022, and proposed a plea to either of the two counts in exchange for a dismissal of the other count and had asked that the government consider a sentence of probation.

The government rejected that offer. We engaged in a series of discussions about other possible pleas. No formal plea offer was ever made by the government.

And then on July 26th of 2022, Mr. Ermine informed us by email that Ms. Kingsbury would be pleading open to both counts to the court. So no formal plea offer was ever offered by the government in this case.

THE COURT: All sound accurate, Mr. Ermine?

MR. ERMINE: Yes, it does, Judge.

THE COURT: Very good.

We'll be in recess.

*******************

REPORTER'S CERTIFICATE

I certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

_____________ _____________________________
Date /s/Gayle M. Wambolt
GAYLE M. WAMBOLT, CRR, RMR
United States Court Reporter